IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JACQUELINE GIBSON-BRADLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:25-cv-00613** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **ULTIUM CELLS, LLC,** | ) | **MAGISTRATE JUDGE FRENSLEY** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacqueline Gibson-Bradley, a resident of Davenport, Iowa, has filed a pro se, in forma pauperis Amended Complaint, alleging disability discrimination, retaliation, and hostile work environment against Defendant Ultium Cells, LLC. (Doc. No. 15). Pending before the Court is Plaintiff's Motion to Reopen Case and Vacate Dismissal ("Motion to Reopen") (Doc. No. 16) and Motion to Ascertain Status of Pending Motion to Reopen Case ("Motion to Ascertain") (Doc. No. 17).

In Plaintiff's Motion to Ascertain, she requests that the Court advise as to the Motion to Reopen. (Doc. No. 17 at 1). Plaintiff's Motion to Ascertain (Doc. No. 17) will be granted insofar as the Court will respond herein.

## I. PROCEDURAL HISTORY

Plaintiff commenced this case on June 3, 2025 by filing a Complaint (Doc. No. 1) and an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2). The Court ordered Plaintiff to file a properly signed amended complaint and an amended IFP application (Doc. No. 6), and Plaintiff did as much in a timely fashion (Doc. Nos. 7 & 8). The Court granted the amended IFP application on March 10, 2026. (Doc. No. 10). However, the Court ordered

Plaintiff to provide further information regarding whether she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the relevant state agency, to state whether she received a right to sue letter, and to attach the right to sue letter on or before April 9, 2026. (*Id.* at 4). Plaintiff timely filed an Amended Complaint (Doc. No. 11) on March 24, 2026, and provided a copy of the right to sue letter issued to her by the EEOC (Doc. No. 11-1).

On March 31, 2026, the Court informed Plaintiff that the Amended Complaint was deficient because, although she stated that she filed a charge of discrimination with the EEOC, she failed to indicate the date of that filing. (Doc. No. 12 at 2). The Court provided Plaintiff with a final chance to comply with the Court's Order and ordered Plaintiff to file an amended complaint indicating the date Plaintiff filed a charge with the EEOC. (*Id.*). The Court instructed Plaintiff that, "All relevant claims, plaintiffs, defendants, and facts shall be set forth in the proposed amended complaint; Plaintiff cannot incorporate by reference her prior allegations. L.R. 15.01(b). The Court will not piece together multiple complaints and attachments to each." (*Id.*). Plaintiff's submission was due by April 30, 2026. (*Id.*).

On April 6, 2026, Plaintiff filed a "Response to Court Order," stating she filed a charge of discrimination with the EEOC on or about March 11, 2025, and she incorporated by reference her previously-filed right to sue letter. (Doc. No. 13). Plaintiff's Response failed to comply with the Court's Order of March 31, 2026 (Doc. No. 12), in that it did not provide all relevant claims, parties, or facts. (Doc. No. 13). The Court dismissed this case on April 9, 2026. (Doc. No. 14). Plaintiff then filed an Amended Complaint[1] (Doc. No. 15) on the same day, within which Plaintiff provided the relevant claims, parties, and facts, the date she filed her charge of discrimination with the EEOC (*Id.* at 3), and another copy of the right to sue letter (Doc. No. 15-1).

---

[1] Both the Amended Complaint and the mailing envelope are dated April 6, 2026, the date of Plaintiff's Response to the Court. (Doc. No. 15 at 12-13).

On April 17, 2026, eight days after the dismissal of this case, Plaintiff filed her Motion to Reopen (Doc. No. 16). Plaintiff later filed her Motion to Ascertain (Doc. No. 17) on August 31, 2026.

## II. MOTION TO REOPEN CASE AND VACATE DISMISSAL (DOC. NO. 16)

In support of Plaintiff's request that the Court vacate its dismissal and reopen the instant case, Plaintiff states that she complied with the Court's Order of March 31, 2026, which required her to file an amended complaint and include specific details regarding Plaintiff's EEOC filing, facts, allegations, and claims. (Doc. No. 16 at 1). Plaintiff states that she mailed the Amended Complaint (Doc. No. 15) prior to the dismissal of this case, and it complies with the Court's Order of March 31, 2026. (Doc. No. 16 at 2). Plaintiff further states that the Amended Complaint was delivered to the Clerk's Office on April 9, 2026, shortly after the entry of dismissal. (*Id.*). Plaintiff asks that this Court reopen the instant case and "allow the matter to proceed based on the Amended Complaint as filed . . . ." (*Id.*).

Relief is available to Plaintiff pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Rule 59 provides that the Court may grant a motion to alter or amend a judgment if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. Fed. R. Civ. P. 59(e); *see GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A motion to alter or amend a judgment under Rule 59(e) must be filed no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). Therefore, Plaintiff's motion, if construed as a Rule 59(e) motion, was timely filed.

The Court dismissed this case on April 9, 2026 after receiving Plaintiff's Response to the Court's Order of March 31, 2026. (Doc. No. 14). Plaintiff's Response was deficient in that it failed to "include any and all applicable facts and claims against Defendant that Plaintiff wishes to make,

including any and all information regarding the alleged employment discrimination . . . and all [relevant] dates . . ." (Doc. No. 12 at 2). (*See* Doc. No. 13). Although filed on the same day as the Court's dismissal Order (Doc. No. 14) but after the entry of the Court's Order, Plaintiff's Amended Complaint and right to sue letter (Doc. Nos. 15 & 15-1) were filed within the 30-day period as set forth by the Court's Order of March 31, 2026 (Doc. No. 12).

Accordingly, the Court will grant Plaintiff's Motion to Reopen Case and Vacate Dismissal (Doc. No. 16) on the grounds that the Court will reinstate this case to the active docket for purposes of conducting the required screening of the Amended Complaint as below. The Court's Order of April 9, 2026 (Doc. No. 14) will be vacated. The Clerk will be directed to reinstate this case to the active docket.

## III. INITIAL REVIEW

### A. Legal Standard

When a plaintiff is proceeding in forma pauperis, the Court must conduct an initial review and dismiss the complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). In making the plausibility determination, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]'

therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se pleading a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, 87 F.4th at 749.

**B. Alleged Facts**

The below facts are presumed true for purposes of the required screening of the Amended Complaint.

Plaintiff suffers from Attention-Deficit/Hyperactivity Disorder, anxiety, and recurring depression. (Doc. No. 15 at 4). Defendant hired her on October 30, 2023 to serve as a Production Operator. (*Id.*). From June 2024 to August 2024, a crew lead repeatedly harassed Plaintiff by way of verbal abuse, derogatory language, aggressive behavior, public humiliation, and blaming. (*Id.* at 5). The crew lead accused Plaintiff of failing to perform her duties and required Plaintiff to leave the production floor. (*Id.*). Plaintiff questioned these actions, and colleagues acknowledged that Plaintiff was properly performing her duties. (*Id.*). Plaintiff was often made the subject of jokes and recurrent hostility. (*Id.*).

The crew lead discouraged Plaintiff from reporting her concerns when she attempted to contact a supervisor regarding these issues. (*Id.*). Plaintiff nonetheless reported the issues to two supervisors on different occasions when she felt it was safe to do so. (*Id.*). Plaintiff went so far as to involve workplace security. (*Id.* at 6). Despite Plaintiff's reports, Defendant "failed to take prompt or effective corrective action to address the harassment or ensure Plaintiff's safety." (*Id.*).

In an effort to alleviate her circumstances, Plaintiff requested a shift change to no avail. (*Id.*). The issues escalated on August 3, 2024, when the crew lead aggressively approached Plaintiff closely with clenched fists, yelled at her, and used degrading and abusive language. (*Id.*). As a result, Plaintiff felt cornered and unable to safely deescalate the situation. (*Id.*). A colleague who witnessed the encounter physically intervened to prevent further escalation. (*Id.*).

Plaintiff experienced a panic attack and severe emotional distress following the incident. (*Id.* at 7). Plaintiff communicated this to her supervisor and informed him/her that she did not feel safe to continue working with the crew lead. (*Id.*). Defendant failed to conduct a meaningful investigation into the matter or take corrective action. (*Id.*).

Plaintiff was terminated "allegedly for attendance reasons" on August 5, 2024, days after Plaintiff reported the incident, although Plaintiff believes her termination was retaliatory. (*Id.*). Plaintiff filed a Charge of Discrimination with the EEOC on March 11, 2025, and she received a right to sue letter on April 2, 2025. (*Id.* at 3-4). Plaintiff commenced this case on June 3, 2025. (Doc. No. 1).

**C. Analysis**

Plaintiff alleges adverse employment actions and violations of the Americans with Disabilities Act ("ADA") that occurred beginning in June 2024 through August 5, 2024, the date of the termination of her employment. (Doc. No. 15 at 5, 7). Plaintiff asks that this Court enter judgment in her favor and award compensatory damages, punitive damages, as well as costs and any other relief the Court deems appropriate. (*Id.* at 11).

"The ADA tasks the EEOC with exercising 'the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability.'" *Pemberton v.*

*Bell's Brewery, Inc.*, 150 F.4th 751, 761 (6th Cir. 2025) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002)). As a result, the Court can rely upon Title VII and its supporting case law in the analysis of administrative exhaustion as it pertains to ADA claims. *Pemberton*, 150 F.4th at 761.

Title VII requires employees to first exhaust their administrative remedies prior to filing suit in federal court, which includes filing a "charge" with the EEOC. *Id.* (citing *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 509 (6th Cir. 2011)). The purpose of this requirement is to allow the EEOC the opportunity to convince the parties to resolve the matter by voluntary settlement rather than through litigation. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731-32 (6th Cir. 2006) (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)). The ADA incorporates the administrative exhaustion requirement in 42 U.S.C. § 12117(a).

1. <u>Timeliness and Administrative Exhaustion</u>

As a general rule, a plaintiff must either file a charge with the EEOC within 180 days of the alleged adverse employment action or file with the appropriate state agency within 300 days if the state is a deferral state. 42 U.S.C. § 2000e-5(e)(1) ("[When] the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from [an unlawful employment] practice . . . such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . . ."); *see Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). These state or local agencies often carry the title of "fair employment practices agencies" ("FEPAs"). *Jones v. Fed. Express Corp.*, 952 F.3d 815, 818 (6th Cir. 2020). The EEOC may initiate proceedings with a FEPA on behalf of an employee. *Jones*, 952 F.3d at 818 (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 816, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).

The EEOC and some FEPAs have entered into "worksharing agreements." *E.E.O.C. v. Com. Off. Prods. Co.*, 486 U.S. 107, 108, 108 S. Ct. 1666, 1667, 100 L. Ed. 2d 96 (1988). "These worksharing agreements typically provide that the state or local agency will process certain categories of charges and that the EEOC will process others, with the state or local agency waiving the 60-day deferral period[2] in the latter instance." *Id.* at 112 (citation omitted). Prior to July 1, 2025[3] (which is the relevant time frame here), the EEOC and the Tennessee Human Rights Commission had a worksharing agreement, which provided:

> In order to facilitate the assertion of employment rights, the EEOC and the [Tennessee Human Rights Commission ("THRC")] each designate the other as its agent for the purpose of receiving and drafting charges …. The EEOC's receipt of charges on the [THRC's] behalf will automatically initiate the proceedings of both the EEOC and the [THRC] for the purposes of [42 U.S.C. §§ 20003-5(c), (e)(1)].

*Jones*, 952 F.3d at 818. Consequently, in a deferral state like Tennessee, *Jackson v. Richards Med. Co.*, 961 F.2d 575, 579 (6th Cir. 1992) (citing Tenn. Code Ann. § 4-21-101), where the EEOC and the state agency have entered into a worksharing agreement, "the employee will have preserved her claim if within 300 days of the allegedly discriminatory acts she either (a) institutes proceedings with the state agency and also then files the charge with the EEOC, or (b) files only with the EEOC, which under the work-sharing agreement, refers the charge to the applicable state agency." *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 828 (6th Cir. 2019). Put succinctly,

---

2 The 60-day deferral period is one in which the relevant state agency retains the "right of exclusive jurisdiction to initially process such charges for a period of 60 days . . . ." *Jones*, 952 F.3d at 818; 42 U.S.C. § 2000e-5(c).

3 The THRC disbanded on June 30, 2025, and the Civil Rights Enforcement Division ("CRED") took over as the state agency handling employment discrimination matters in conjunction with the EEOC, albeit in a different capacity as compared to the THRC. https://wapp.capitol.tn.gov/apps/BillInfo/Default?BillNumber=HB0910&GA=114 (last visited Oct. 27, 2026); https://www.tn.gov/attorneygeneral/cred (last visited Oct. 27, 2026). The CRED and the EEOC had a work-sharing agreement that existed between October 1, 2025 and September 30, 2026. It is unsettled, however, as to whether a worksharing agreement will exist between the EEOC and CRED in fiscal year 2027 (October 1, 2026 through September 30, 2027). This matter does not affect the disposition as presented in this Order as Plaintiff filed her charge of discrimination prior to July 1, 2025.

prior to July 1, 2025, a plaintiff in Tennessee alleging employment discrimination charges had 300 days to file a charge of discrimination with either the EEOC or the THRC.

If the EEOC finds that the charge has a reasonable basis, it will issue to the plaintiff a notice of right to sue. 29 C.F.R. § 1601.28(b). Upon receipt of a notice of right to sue, the employee has 90 days in which to file suit. 42 U.S.C. § 2000e-5(f)(1).

Administrative exhaustion (that is, completing the required process of seeking a remedy or resolution before the applicable administrative agency, here, the EEOC) thus involves (1) timely filing a charge with the EEOC and (2) receiving and acting upon a statutory right to sue notice. *Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006) (citing *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)).

Here, Plaintiff alleges that her employment was terminated on August 5, 2024. (Doc. No. 15 at 5). She reports that she filed a charge of discrimination with the EEOC on March 11, 2025, 218 days after her termination. (*Id.* at 3). Plaintiff received a right to sue letter on April 2, 2025, and she filed the Complaint in this case 62 days later on June 3, 2025. (*Id.* at 4).

Plaintiff's filing with the EEOC was timely by virtue of the worksharing agreement between the EEOC and the THRC at that time, in that it was filed within 300 days after her termination. The filing of the Complaint was timely as well, in that it was filed within 90 days after Plaintiff received the right to sue letter. Thus, Plaintiff's administrative exhaustion was proper. The Court now considers Plaintiff's claims on the merits.

2. <u>Disability Discrimination Analysis</u>

For claims of disability discrimination, a plaintiff "must first show that she is disabled under the ADA and that 'her employer "knew or had reason to know" of her disability.'" *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (quoting *Williams v. AT&T Mobility Servs.*

*LLC*, 847 F.3d 384, 395 (6th Cir. 2017)); *see Kellar v. Yunion, Inc.*, 157 F.4th 855, 873 (6th Cir. 2025) (requiring a litigant to show that "he 'was subjected to harassment . . . based on' his disability"). "A person is disabled under the ADA when the person has 'a physical or mental impairment that substantially limits one or more major life activities,' has 'a record of such impairment,' or is 'regarded as having such an impairment.'" *Thompson*, 985 F.3d at 522-23 (citing 42 U.S.C. § 12102(1)).

Plaintiff makes a conclusory statement, saying she "has disabilities including ADHD, anxiety, and recurring depression," yet she provides no further information regarding such. (Doc. No. 15 at 4-7). More specifically, Plaintiff fails to allege that she has "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such impairment," or is "regarded as having such an impairment." *Thompson*, 985 F.3d at 522-23. Even if Plaintiff's conclusory statement was considered sufficient, Plaintiff does not allege in the Amended Complaint the second element: that Defendant knew or had reason to know of any disability she may have. (*See* Doc. No. 15).

"[T]he Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am.*, 602 U.S. at 181 (quoting *Iqbal*, 556 U.S. at 678–79), but the Court need not "accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC*, 87 F.4th at 749 (citation omitted). Although Plaintiff states that she has alleged disabilities, Plaintiff provides no further information that she is disabled or that Defendant, the party whose awareness of the disabilities is required, was aware of any disability.

Plaintiff has failed to allege both necessary elements of her claim. Considering her pro se status, Plaintiff will be allowed to amend the Complaint as to this claim as detailed in section IV below.

3. <u>Retaliation Analysis</u>

To establish a prima facie case of retaliation, a plaintiff must first show that "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)).

This claim fails for similar reasons as stated above. Plaintiff fails to allege that she engaged in an activity protected under the ADA or that Defendant knew of that activity. (*See* Doc. No. 15). Thus, Defendant would not have been aware of any potential engagement by Plaintiff in an activity protected under the ADA. (*See id.*).

Plaintiff has failed to allege the first two necessary elements of her retaliation claim. Considering her pro se status, Plaintiff will be allowed to amend the Complaint as to this claim as detailed in section IV below.

4. <u>Hostile Work Environment Analysis</u>

To demonstrate a claim of hostile work environment[4], a plaintiff must show "(1) [s]he is disabled; (2) [s]he 'was subjected to harassment, either through words or actions, based on' [her] disability; (3) the harassment 'create[ed] an objectively intimidating, hostile, or offensive work environment' that 'produce[d] "some harm respecting an identifiable term or condition of

---

[4] In the Amended Complaint, Plaintiff specifies under "COUNT I – DISABILITY DISCRIMINATION (ADA)" that "Defendant's actions violated the ADA." (Doc. No. 15 at 8). Similarly, under "COUNT II – RETALIATION (ADA)," Plaintiff states "Defendant's actions constitute unlawful retaliation under the ADA." (*Id.* at 8-9). Plaintiff does not indicate the same under "COUNT III – HOSTILE WORK ENVIRONMENT." To properly allege a hostile work environment claim, the litigant must allege that they are part of a protected class. (*See Wyatt v. Nissan North America, Inc.*, 999 F.3d 400, 411 (6th Cir. 2021); *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 500 (6th Cir. 2009); *Kellar*, 157 F.4th at 873. Plaintiff does not do as much here. Affording the Amended Complaint "a liberal construction," *Erickson*, 551 U.S. at 94, the Court interprets Plaintiff's hostile work environment claim as one made under the ADA.

employment"'; and (4) 'there is some basis of liability on the part of the employer.'" *Kellar*, 157 F.4th at 873 (citations omitted).

As stated above, Plaintiff merely provides a conclusory statement that she has disabilities of ADHD, anxiety, and recurrent depression. (Doc. No. 15 at 4). Plaintiff offers no information in the Amended Complaint as to whether the employment incidents at issue were based on her disability, as she does not state whether Defendant knew or should have known of her alleged disabilities. (*See* Doc. No. 15).

Therefore, Plaintiff fails to allege the first two necessary elements of her hostile work environment claim. Considering her pro se status, Plaintiff will be allowed to amend the Complaint as to this claim as detailed in section IV below.

## IV. CONCLUSION

Plaintiff's Motion to Ascertain Status of Pending Motion to Reopen Case (Doc. No. 17) is **GRANTED**.

Plaintiff's Motion to Reopen Case and Vacate Dismissal (Doc. No. 16) is **GRANTED**, and the Court's Order of April 9, 2026 (Doc. No. 14) is **VACATED**. The Clerk is **DIRECTED** to reinstate this case to the active docket.

The case having been reopened, the Court has conducted the required screening of the in forma pauperis Amended Complaint. Based on the reasons set forth herein, the Court finds that the Amended Complaint fails to state viable claims of disability discrimination, retaliation, and hostile work environment at this time.

Plaintiff is **DIRECTED** to file, within **30 DAYS** of the date this Order is entered, an amended complaint that resolves the deficiencies the Court has outlined above. All relevant claims, plaintiffs, defendants, and facts shall be set forth in the proposed amended complaint; Plaintiff

cannot incorporate by reference her prior allegations. L.R. 15.01(b). The Court will not piece together multiple complaints and attachments to each.

Plaintiff is forewarned that, should she fail to comply with the Court's Order within the time specified, any limitations period applicable to this action will no longer be tolled and the case will be dismissed.

Failure to keep the Court apprised of any change in Plaintiff's address of record may also result in dismissal. M.D. Tenn. L.R. 41.01(b).

Resources for pro se litigants are available free of charge on the Court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE